UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ARNOLD L. ROBINSON, JR,

                              Plaintiff,

   -against-

COMMISSIONER JOSEPH SPANNO; SERGEANT McWILLIAMS; and SERGEANT BARRESI,

                             Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/23/2021

No. 20 Civ. 642 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

    *Pro se* Plaintiff Arnold L. Robinson Jr. ("Plaintiff"), an inmate residing in Valhalla Correctional Facility, commenced this action on or about January 21, 2020, asserting federal claims pursuant to 42 U.S.C. § 1983 ("Section 1983"), and state law claims arising from Defendants' Sergeant Derrick McWilliams ("Sgt. McWilliams") and Sergeant Joseph Barresi ("Sgt. Barresi") (collectively, the "Defendants") failure to protect him from other inmates and role in confining him to a cell afterwards. (Complaint ("Compl.") (ECF No. 2).) Defendants move pursuant to Rule 12(b)(6) to dismiss Plaintiff's complaint for failure to state a claim upon which relief can be granted. For the following reasons, the motion to dismiss is GRANTED and Plaintiff's Complaint is dismissed without prejudice.

## **BACKGROUND**

    The following facts are taken from Plaintiff's Complaint[1], dated December 2, 2019, and filed January 21, 2020. The facts as alleged are accepted as true for the purposes of this motion.

---

[1] Plaintiff's Complaint does not contain numbered paragraphs. Factual allegations are taken from an unnumbered document attached to Plaintiff's completed Form Prisoner Civil Rights Complaint, and appears on the fifth page of ECF No. 2.

*See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016).

Plaintiff, an inmate at Valhalla Correctional Facility ("Valhalla"), experienced various threats and was subjected to violence and continuous cell confinement after being transferred between housing units at Valhalla. For an undisclosed period of time during the fall of 2019, Plaintiff was subjected to "keeplock" confinement – *i.e.*, a form of disciplinary confinement where inmates are continuously kept in their cells. Then, on November 19, 2019, he was transferred from an unspecified housing unit to the 1 West Housing Unit ("1 West"). Upon arriving at 1 West, Plaintiff encountered a series of perceived challenges to his social status in at 1 West. On his first day residing in 1 West, he was told by an unnamed inmate that he was being watched by the other inmates and an unspecified person instructed him to pack his property. Plaintiff refused to comply with the instruction in order to avoid being perceived as "weak [by] the other inmates." During the following three days, he encountered additional menacing behavior and perceived challenges to his social status at 1 West. These challenges included being verbally taunted and physically assaulted, *i.e.*, unwanted touching, by other inmates.

By November 21, 2019, Plaintiff realized it was improvident to continue residing at 1 West and asked Sgt. McWilliams to help him transfer to a different housing unit. He told Sgt. McWilliams that his request was due to "issues [he had] with another inmate" and that facilitating the move would prevent a potential outbreak of violence – *i.e.*, he did "not want[] to be assaulted by," or commit an assault against, an unnamed inmate. Sgt. McWilliams advised Plaintiff to write a statement on the situation. Plaintiff prepared the statement, handed it to Sgt. McWilliams, and was advised by Sgt. McWilliams that Plaintiff would not be moved that night because it was too late, and booking was closed. Plaintiff rejects Sgt. McWilliams explanation and contends that

booking was open 24 hours a day. Instead of being moved, Plaintiff was locked in his cell throughout the night of November 21, 2019.

The following day, inmates continued to menace Plaintiff. When Plaintiff woke up, he found an unnamed inmate watching him from outside of his cell, pacing back and forth, and verbally taunting him. This inmate threatened to take Plaintiff's mattress. Subsequently, another inmate came to Plaintiff's cell, told him to pack his property, and threatened to cut Plaintiff. When the recreation officers came, Plaintiff initially decided to remain in his cell rather than immediately go to the courtyard in order to avoid other inmates.

After a while, he concluded that it would be safe to go to the courtyard because other inmates were presumably doing their daily programs and asked for permission to go to the courtyard for his allotted hour of recreation. Plaintiff entered the courtyard, walked to the pull up bars, and was taunted by four unnamed inmates that had been threatening him over the preceding three days. The threats quickly escalated to violence as Plaintiff was attacked from behind by the four inmates. For what seemed like ten minutes, Plaintiff was kicked and punched from all sides, sustained hits to his face, nose, and torso, and had his knee stomped by the four inmates. Eventually, Plaintiff was rescued by the recreational officer and the violence ended.

After the attack, an investigation or disciplinary proceeding was initiated concerning the violent incident. To this end, Plaintiff was given a ticket alleging that Plaintiff was the aggressor or instigator of the attack. Upon completion of the investigation, Plaintiff was exonerated and the ticket was dismissed. During the investigation, Sgt. Barresi allegedly confined Plaintiff in his cell "unlawfuly and unmerritted" because Sgt. Barresi was intentionally trying to single Plaintiff out and "save" inmates he favored.

Plaintiff states that a situation like this has never happened to him before. Plaintiff's injuries include ongoing dizziness and migraines, bruising to his left temple and eye, swelling and throbbing pain in his knee, ankle, and tibia. Plaintiff states that the assault re-injured his right leg (or knee), which had previously been repaired with a medical device. Plaintiff also experienced symptoms of post-traumatic stress disorder such as flashbacks, nightmares, and hypervigilance.

## **LEGAL STANDARD**

**Motion to Dismiss**

On a motion to dismiss under Fed. R. Civ. P. 12(b)(6), dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When there are well-pleaded factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 679. "Although for the purposes of a motion to dismiss [a court] must take all of the factual allegations in the complaint as true, [it is] 'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id*. (quoting *Twombly*, 550 U.S. at 555). It is not necessary for the complaint to assert "detailed factual allegations," but must allege "more than labels and conclusions." *Twombly*, 550 U.S at 555. The facts in the complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Id*.

"Pro se complaints are held to less stringent standards than those drafted by lawyers, even following *Twombly* and *Iqbal*." *Thomas v. Westchester*, No. 12–CV–6718 (CS), 2013 WL 3357171 (S.D.N.Y. July 3, 2013). The court should read pro se complaints "'to raise the strongest arguments that they suggest.'" *Kevilly v. New York*, 410 F. App'x 371, 374 (2d Cir. 2010) (summary order) (quoting *Brownell v. Krom*, 446 F.3d 305, 310 (2d Cir. 2006) ); *see also Harris*

4

*v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) ("[E]ven after *Twombly*, though, we remain obligated to construe a pro se complaint liberally."). "However, even pro se plaintiffs asserting civil rights claims cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a right to relief above the speculative level." *Jackson v. N. Y.S. Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010) (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted). Dismissal is justified, therefore, where "the complaint lacks an allegation regarding an element necessary to obtain relief," and therefore, the "duty to liberally construe a plaintiff's complaint [is not] the equivalent of a duty to re-write it." *Geldzahler v. New York Medical College*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009) (internal citations omitted).

**42 U.S.C. § 1983 Claims**

Section 1983 provides, in relevant part, that: "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *see also Patterson v. County of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004). To state a claim under Section 1983, a plaintiff must allege "(1) the challenged conduct was attributable to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed by the U.S. Constitution." *Castilla v. City of New York*, No. 09 Civ. 5446, 2013 WL 1803896, at *2 (S.D.N.Y. April 25, 2013); *see also Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010). Therefore, a Section 1983 claim has two essential elements: (1) the defendant acted under color of state law, and (2) as a result of

5

the defendant's actions, the plaintiff suffered a denial of his federal statutory rights, or his constitutional rights or privileges. *See Annis v. Cnty. of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998); *Quinn v. Nassau Cnty. Police Dep't*, 53 F. Supp. 2d 347, 354 (E.D.N.Y. 1999) (noting that Section 1983 "furnishes a cause of action for the violation of federal rights created by the Constitution") (citation omitted).

## DISCUSSION

Reading the Complaint liberally, Plaintiff attempts to assert three federal causes of action pursuant to Section 1983: (1) an Eighth Amendment failure to protect claim against Sgt. McWilliams in connection with the violent incident on November 23, 2019; (2) a procedural due process claim against Sgt. Barresi in connection with his keeplock confinement following the violent incident on November 23, 2019; and (3) a defamation claim sounding in constitutional violations against Sgt. Barresi in connection with allegedly defamatory statements made concerning Plaintiff's role in the violent incident of November 23, 2019. Separately, Plaintiff appears to also assert a state law claim for defamation. As discussed below, the Court concludes that Plaintiff has failed to adequately plead any of these claims, and dismisses all claims without prejudice.

### I.  Plaintiff's Failure to Protect Claim Against Sgt. McWilliams

The Eighth Amendment proscribes the unnecessary and wanton infliction of pain and imposes a duty on prison officials to take "reasonable measures to guarantee the safety of inmates." *Farmer v. Brennan*, 511 U.S. 825, 844–45 (1994). Likewise, "prison officials have a duty to protect prisoners from violence at the hands of other prisoners." *Id.* at 833; *see also Heisler v. Kralik*, 981 F. Supp. 830, 835 (S.D.N.Y 1997) ("It is well established that the Eighth Amendment imposes on prison officials the duty to protect inmates from violence at the hands of other inmates.").

Accordingly, "a prison official's failure to protect a prisoner from harm [from other prisoners] may form the basis of a Section 1983 claim." *Farmer*, 511 U.S. at 833.

For a failure to protect claim, the Court must apply the two-pronged framework for claims of deliberate indifference. First, "the plaintiff must demonstrate that the alleged deprivation is sufficiently serious under an objective standard" and, second, the plaintiff must demonstrate "that the charged prison officials acted with a sufficiently culpable state of mind." *Knowles v. N.Y.C. Dep't of Corr.*, 904 F. Supp. 217, 221 (S.D.N.Y. 1995) (citing *Farmer*, 511 U.S. at 834).

  A. *Objective Prong*

To meet the requirements of the objective prong, "the inmate must show that the conditions [of incarceration] . . . pose an unreasonable risk of serious damage to his health, which includes the risk of serious damage to physical and mental soundness." *Darnell v. Pineiro*, 849 F.3d 17, 30 (2d Cir. 2017) (internal quotation marks and citations omitted). The plaintiff must further demonstrate that the unreasonable risk was "actual or imminent." *Benjamin v. Fraser*, 343 F.3d 35, 51 (2d Cir. 2003), *overruled on other grounds by Caiozzo v. Koreman*, 581 F.3d 63 (2d Cir. 2009). "The first *Farmer* factor, substantial risk of serious harm, depends not on the officials' perception of the risk of harm, but solely on whether the facts . . . show that the risk of serious harm was substantial." *Lewis v. Siwicki*, 944 F.3d 427, 431–32 (2d Cir. 2019). Relevant factors include "the nature of the prison population with whom [the plaintiff] was incarcerated," and whether there was specific information ahead of time suggesting that the plaintiff's safety was in jeopardy. *Vickers-Pearson v. City of New York*, No. 18 CIV. 8610 (KPF), 2020 WL 5732028, at *5 (S.D.N.Y. Sept. 24, 2020) (quoting *Lewis*, 944 F.3d at 432).

On the one hand, even when violence between inmates does transpire, some courts have determined that there was an insufficiently significant risk of violence to adequately plead a Section 1983 claim. For example, in *Murray v. Goord*, the district court held that "plaintiff has

7

failed to allege sufficient facts to show that he was incarcerated under conditions posing a substantial risk of serious harm" despite the occurrence of a physical altercation, because plaintiff's "claim that a corrections officer informed him that inmate Bradley threatened to physically harm him is insufficient to show there was a substantial risk of serious harm." 668 F. Supp. 2d 344, 358 (N.D.N.Y. 2009) (quotation marks and citation omitted). Similarly, in *Garcia v. Rodriguez*, a correctional officer's "isolated statement [to Garcia, *i.e.*, the prisoner plaintiff,] that Garcia would 'get hurt,' which was unaccompanied by any other words or actions or prior history between [instigator] and Garcia, was [in]sufficient to put Gonzalez, or any reasonable officer in his position, on notice that Garcia faced a substantial risk of serious harm or that it was anything more than an idle threat." No. 05 CIV. 5915 (JSR), 2007 WL 2456631, at *2 (S.D.N.Y. Aug. 24, 2007). On the other hand, "a plaintiff can demonstrate that he faced a substantial risk of serious harm by alleging that 'there is evidence of a previous altercation between a plaintiff and an attacker, coupled with a complaint by plaintiff regarding the altercation or a request by plaintiff to be separated from the attacker.'" *Delaney v. Westchester Cty. Dep't of Corr.*, No. 19-CV-03524 (PMH), 2021 WL 243066, at *2 (S.D.N.Y. Jan. 25, 2021) (quoting *Luckey v. Jonas*, No. 18-CV-8103, 2019 WL 4194297, at *4 (S.D.N.Y. Sept. 4, 2019)).

The Complaint asserts that, during Plaintiff's first three days at 1 West, he was threatened by a number of certain inmates on multiple occasions. This included multiple incidents of being taunted and "physically assaulted through involuntary touching". (*See* Compl.) Moreover, read liberally, he communicated to Sgt. McWilliams that "another inmate" might attack him (or that he might attack that inmate) absent intervention by corrections officers, and subsequently the actual attack against Plaintiff occurred less than 24 hours after he reported the danger to Sgt. McWilliams.

8

Based on these facts, Plaintiff just barely pleads the existence of an unreasonable risk of harm. Plaintiff was subject to multiple threats over the course of several days which indicates that the risk of harm was more substantial than cases, such as *Garcia*, 2007 WL 2456631, at *2, involving an isolated threat of harm. Likewise, Plaintiff alleges history of physical assaults—*e.g.*, unwanted physical touching—and not just verbal threats. The Complaint is certainly not a model of clarity, but it appears to be the case that Plaintiff is alleging that the threats of violence were attributable to the same group of people that ultimately attacked him. Accordingly, this is not a case where there is no history of prior altercations between the attackers and the plaintiff. Though not clearly stated, the allegations of repeated verbal and physical altercations between Plaintiff and the unnamed attacker adequately support the objective prong to survive a motion to dismiss. *Heisler*, 981 F. Supp. at 837.

Separately, Plaintiff alleges that he was subjected to unabated violence for approximately ten minutes (or what felt like ten minutes) before anyone intervened, during which time he incurred serious injuries. Lengthy exposure to violence alone may be sufficient to satisfy the objective prong. *See, e.g.*, *Luckey*, 2019 WL 4194297, at *4; *Bussey v. Miller*, No. 16-CV-00082A(F), 2020 WL 4719957, at *10 (W.D.N.Y. July 1, 2020), *report and recommendation adopted*, No. 16-CV-82-A, 2020 WL 4705208 (W.D.N.Y. Aug. 12, 2020); *Constant v. Prack*, No. 16-CV-3985 (NSR), 2019 WL 3287818, at *6 (S.D.N.Y. July 19, 2019).

  B. *Subjective Prong*

The subjective prong of the deliberate indifference test is satisfied when an official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847. Plaintiff need not show that Sgt. McWilliams acted or failed to act "for the very purpose of causing harm or with knowledge that harm will result," *id.* at 837, and instead "'must prove that the defendant-official acted intentionally

9

to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the [inmate] even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety,'" *Quinones v. Rollison*, No. 18-CV-1170 (AJN), 2020 WL 6420181, at *7 (S.D.N.Y. Nov. 1, 2020) (quoting *Darnell*, 849 F.3d at 35).

As it pertains to risks of harm from specific inmates, courts have found that the subjective prong was satisfied where the prisoner told a corrections officer a sufficiently detailed account about one or more specific threats or past instances of aggression from a known offender. *See Villa v. Westchester Cty.*, No. 19-CV-428 (KMK), 2020 WL 4505968, at *7 (S.D.N.Y. Aug. 5, 2020); *Francis v. City of New York*, No. 17CIV1453LAKHBP, 2018 WL 4659478, at *4 (S.D.N.Y. Aug. 21, 2018) ("Courts have found that, when an inmate informs corrections officers about a specific fear of assault and is then assaulted, this is sufficient to proceed on a claim of failure to protect." (quotation marks and citation omitted)); *Beckles v. Bennett*, 05 Civ. 2000 (JSR), 2008 WL 821827 at *17 (S.D.N.Y. Mar. 26, 2008) (explaining that a failure-to-protect claim survived summary judgment because the plaintiff had "presented evidence that he made [the defendant] aware of a specific threat to his safety and that several hours later he was seriously assaulted").

By contrast, courts have found that vague concerns about safety from future assault by unknown individuals—*e.g.*, telling a corrections officer that prisoner (1) feared a rumored "Beat Down/Goon Squad", (2) believed his "life [was] in danger in that jail cell," or (3) "feared for [his] safety,"—are insufficient for the officer to have inferred the existence of a substantial risk. *See, e.g.*, *Marshall v. Griffin*, No. 18-CV-6673 (KMK), 2020 WL 1244367, at *9 (S.D.N.Y. Mar. 16, 2020) (finding failure to protect claim insufficient where Plaintiff voiced concern to a prison official about rumors of a "Beat Down/Goon Squad," a prison official investigated and dismissed

the concern as unsubstantiated.); *Smolen v. Wesley*, No. 16-CV-2417 (KMK), 2019 WL 4727311, at *11 (S.D.N.Y. Sept. 25, 2019); *Velez v. City of N.Y.*, No. 1:17-CV-9871-GHW, 2019 WL 3495642, at *1 (S.D.N.Y. Aug. 1, 2019) (subjective prong not satisfied where merely told corrections officer that he felt like his "life [was] in danger in that jail cell," although he did not "get into details" and "didn't point anyone out."); *Anselmo v. Kirkpatrick*, No. 19-CV-0350, 2019 WL 2137469, at *4 (N.D.N.Y. May 16, 2019); *Haughton v. Clinton*, No. 15-CV-1160 (JPO), 2015 WL 9244398 at *2 (S.D.N.Y. Dec. 17, 2015) (granting defendant's motion to dismiss the failure to protect claim when plaintiff only told the correction officer that he "feared for [his] safety," because that statement was "too conclusory for [the officer] to have inferred the existence of such a substantial risk").; *Rivera v. State of N. Y.*, No. 96 CIV. 7697 (RWS), 1999 WL 13240, at *9 (S.D.N.Y. Jan. 12, 1999).

Here, Plaintiff asserts that he told Sgt. McWilliams that he wanted to be moved "due to [him] having issues with another inmate and not wanting to be assaulted or assaulting this person." (*See* Compl.) Plaintiff does not state that he identified the inmate by name, but instead told the corrections officer that he was having issues with "another inmate." Construed liberally, the Court credits Plaintiff with attributing the source of danger to another inmate, whether named or unnamed, rather than the inmate population at large. Even still, this communication alone is insufficiently detailed to apprise Sgt. McWilliams of a substantial risk of imminent harm because it lacks details of specific threats or past altercations with the other inmate. The same holds true with respect to Plaintiff's written statement to McWilliams insofar as Plaintiff does not describe the substance of his written statement.

Accordingly, because Plaintiff has failed to allege sufficient details regarding what he told Sgt. McWilliams when he asked to be moved to a different housing unit, the Court grants

Defendants' motion to dismiss to the extent it concerns Plaintiff's failure to protect claim against Sgt. McWilliams. Plaintiff's failure to protect claim against Sgt. McWilliams is dismissed without prejudice. Plaintiff is granted leave to amend his Complaint in order to furnish additional allegations concerning the substance of what he told Sgt. McWilliams.

## II. Plaintiff's Due Process Claim Against Sgt. Barresi

Plaintiff appears to contend that he was not afforded proper process before he was placed in keeplock confinement after the violent incident in November in violation of his Fourteenth Amendment due process rights. Defendants maintain that Plaintiff has failed to adequately state a claim for due process violations. For the following reasons, this Court agrees with Defendants.

The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. To state a procedural due process claim, Plaintiff must show "(1) that Defendants deprived him of a cognizable interest in life, liberty, or property, (2) without affording him constitutionally sufficient process." *Proctor v. LeClaire*, 846 F.3d 597, 608 (2d Cir. 2017) (internal quotation marks omitted).

Regarding the first prong, a prisoner's liberty interest may be implicated by keeplock confinement "only if the discipline imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Davis v. Barrett*, 576 F.3d 129, 133 (2d Cir. 2009) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). To determine whether the plaintiff endured an "atypical and significant hardship," courts consider "the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions" as well as the duration of the segregated confinement. *Davis*, 576 F.3d at 133. Although the Second Circuit has declined to establish bright-line rules in this area, it has explicitly noted that "SHU confinements of fewer than 101 days could constitute atypical and significant hardships if the conditions were more severe than the normal SHU conditions" or "a more fully developed record showed that even relatively

brief confinements under normal SHU conditions were, in fact, atypical." *Palmer v. Richards*, 364 F.3d 60, 65 (2d Cir. 2004).

Even applying the liberal standards prescribed by the Second Circuit, Plaintiff has failed to establish a liberty interest implicated by his keeplock confinement. Among other things, Plaintiff has failed to allege the duration of his keeplock confinement or whether he was denied any privileges during this unspecified period. At bottom, he has merely alleged that "left in my cell unlawfully and unmerited by sgt. baresi." (*See* Compl.) This sort of vague allegation is insufficient to support a due process claim. *See, e.g.*, *McGriff v. Keyser*, No. 17-CV-7307 (NSR), 2019 WL 6033421, at *5 (S.D.N.Y. Nov. 13, 2019) ("The 'loss' of unspecified 'privileges' and 'deprivation of liberty and amenity, and physical torture and emotional injury' amount to mere conclusory statements" that are insufficient to support a due process claim.); *Colon v. Annucci*, 344 F. Supp. 3d 612, 634 (S.D.N.Y. 2018) (dismissing due process claim where "Plaintiff also does not allege any facts suggesting that he was exposed to any conditions of confinement more harsh than typical keeplock; indeed, he cites only the loss of unspecified privileges.").

Accordingly, Plaintiff's due process claim is dismissed without prejudice. In light of Plaintiff's pro se status, Plaintiff is granted leave to amend his Complaint to allege facts regarding the conditions of his keeplock confinement.

### III. Whether Plaintiff has Asserted a Defamation Claim Under Federal Law

Though unclear, it appears that Plaintiff is attempting to assert a claim for defamation against Sgt. Barresi in connection with Sgt. Barresi's role in issuing a ticket accusing Plaintiff of instigating the violent incident that occurred in or around November 22, 2019. (*See* Compl.) As discussed in more detail below, this claim cannot survive a motion to dismiss to the extent it is predicated upon state law because Plaintiff failed to file a notice of claim. Separately, Plaintiff has not adequately alleged a federal claim for defamation.

As the Second Circuit has explained, defamation is only cognizable as a violation of federal constitutional law in narrow instances:

> Generally, defamation is an issue of state, not of federal constitutional, law. *Lauro v. Charles*, 219 F.3d 202, 207 (2d Cir.2000) (citing *Paul v. Davis*, 424 U.S. 693, 699–701, 96 S. Ct. 1155, 47 L. Ed. 2d 405 (1976)). However, under limited circumstances, federal constitutional relief is available for defamation committed by government officials. *Paul*, 424 U.S. at 701–10, 96 S. Ct. 1155; *see also Vitek v. Jones*, 445 U.S. 480, 493, 100 S. Ct. 1254, 63 L. Ed. 2d 552 (1980) (concluding that labeling an inmate mentally ill, and transferring him to a mental hospital without due process, wrongly stigmatized him). Specifically, an action can be grounded in 42 U.S.C. § 1983 when that plaintiff can demonstrate "a stigmatizing statement plus a deprivation of a tangible interest." *Algarin v. Town of Wallkill*, 421 F.3d 137, 138 (2d Cir.2005); *see also Patterson v. City of Utica*, 370 F.3d 322, 330 (2d Cir.2004).
>
> To establish a "stigma plus" claim, a plaintiff must show (1) "the utterance of a statement sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she claims is false," and (2) "a material state-imposed burden or state-imposed alteration of the plaintiff's status or rights." *Sadallah v. City of Utica*, 383 F.3d 34, 38 (2d Cir.2004) (internal citations and quotation marks omitted) (Sotomayor, J.)

*Vega v. Lantz*, 596 F.3d 77, 81 (2d Cir. 2010).

Here, Plaintiff's conclusory allegation that Sgt. Barresi engaged in a "defamation of [Plaintiff's] character where he was intentionally attempting to single [Plaintiff] out and save inmates he favors" (*see* Compl.) does not, on its face, allege that he was lumped into any stigmatizing category – *e.g.*, classifying a prisoner as mentally ill or a sex offender. Accordingly, Plaintiff's federal defamation claim is dismissed without prejudice.

IV. **Remaining State Law Claims**

Defendants assert that Plaintiff's state law claims against Defendants must be dismissed because he has failed to file a notice of claim against any of the County Defendants. In as afar as Plaintiff's alleges state law claims against defendant in their official capacities, this court agrees

14

that those claims must be dismissed without prejudice. The case law is very clear that New York General Municipal Law § 50-e requires a notice of claim as a condition precedent to bringing a personal injury action against a municipal corporation, or any of its officers, agents, or employees. N.Y. Gen. Mun. Law§§ 50-e(1), 50-i(1); *see Parise v. NYC Dep't of Sanitation*, 306 Fed. App'x 695, 697 (2d Cir. 2009). Although the Court must construe the *pro se* Plaintiff's Complaint liberally, the Court cannot exempt Plaintiff from notice of claim requirements under New York law. "Federal courts do not have jurisdiction to hear complaints from plaintiffs who have failed to comply with the notice of claim requirement, or to grant permission to file a late notice." *Dumel v. Westchester County*, No. 19-CV-2161 (KMK), 2021 WL 738365, at *15 (S.D.N.Y. Feb. 25, 2021) (quoting *Gibson v. Comm'r of Mental Health*, No. 04-CV-4350, 2006 WL 1234971, at *5 (S.D.N.Y. May 8, 2006)).

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED. Plaintiff's claims are dismissed without prejudice and Plaintiff is granted leave to amend his Complaint in accordance with this Opinion. **Plaintiff is directed to file an Amended Complaint consistent with this Opinion on or before April 26, 2021. Should Plaintiff timely file an Amended Complaint, Defendants shall have twenty-one days thereafter to file an answer or a responsive pleading. Should Plaintiff fail to timely file an Amended Complaint, the claims shall be deemed dismissed with prejudice**.

/
/
/
/
/

The Clerk of the Court is respectfully directed to: (1) terminate the motion at ECF No. 18, (2) mail a copy of this Opinion and Order to Plaintiff at his address of ECF, and (3) make an entry on the docket reflecting service of the Opinion and Order upon Plaintiff.

Dated:  March 23, 2021　　　　　　　　　　　　　　SO ORDERED:
　　　　White Plains, New York

_____
NELSON S. ROMÁN
United States District Judge